UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                        :

ORIENT EXPRESS CONTAINER CO., LTD.,    :
                                          :

                          Plaintiff,    :        1:21-cv-7752-GHW
                                          :

                  -against -        :    MEMORANDUM OPINION &
                                          :            ORDER

BULB BASICS LLC *and* INAYAT            :
NOORMOHMAD,                            :

                                          :
                          Defendants.  :
                                          :
-----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/27/2022

GREGORY H. WOODS, United States District Judge:

       Plaintiff Orient Express Container Co., Ltd. ("OEC") is a shipping company.  Defendant

Bulb Basics LLC ("Bulb") entered into a number of agreements with OEC to ship Bulb's products

to the United States.  Turbulence arose when Defendants refused to pay about $65,000 in invoices

from OEC.  This lawsuit washed up at this Court's doors as a result.  Defendants moved to dismiss

the case, arguing among other things that a settlement agreement between the parties had already

released the claims asserted by Plaintiff in this lawsuit.

       On March 15, 2022, Judge Robert W. Lehrburger issued a thoughtful Report &

Recommendation agreeing with Defendants' arguments that Plaintiff's claims had been released by

the parties' settlement agreement.  The Report & Recommendation disregarded Plaintiff's argument

that the settlement agreement should be reformed because it concluded that Plaintiff had not

presented evidence of fraud or a mistake of fact.  However, because Kansas law permits the

reformation of a contract based merely on a party's mistake regarding the content of a contract, and

on the basis of inequitable conduct—"constructive fraud"—in addition to outright fraud, the Court

cannot adopt the Report & Recommendation in full, and, therefore, DENIES Defendants' motion.

       .

I.      **BACKGROUND**

The Court refers to the Report & Recommendation, Dkt. No. 31 (the "R&R"), for a comprehensive description of the facts and procedural history of the case but will briefly review the procedural history relevant to this motion.

OEC filed its complaint on September 16, 2021, asserting that Defendants had failed to pay $65,283.59 owed to it for services provided with respect to eight bills of lading, among other claims. Dkt. No. 1 ¶¶ 2, 9, 13, 26-45.  On October 19, 2021, Defendants moved to dismiss the complaint, arguing that the Court lacked subject matter jurisdiction, that venue was improper, that the Court did not have personal jurisdiction over them, and that OEC had failed to state a claim.  Dkt. Nos. 12, 13 ("Defs.' Mem.").  In support of their motion to dismiss, Defendants submitted a settlement agreement (the "Settlement Agreement"), which, they asserted, settled Bulb's account with OEC and released Defendants from any liability with respect to claims arising from the eight bills of lading at issue in this case.  Defs.' Mem. at 1; Dkt. No. 14, Ex. A.

OEC filed an opposition to the motion to dismiss on November 9, 2021.  Dkt. No. 18 ("Opp.").  OEC noted in its opposition that Defendants had filed materials in support of their motion to dismiss—including the Settlement Agreement—that were neither attached to, nor incorporated by reference into, OEC's complaint.  Opp. at 1.  However, OEC "[did] not object" to the conversion of Defendants' motion to dismiss into a motion for summary judgment, and "in fact[] welcome[d] the opportunity for this Honorable Court to proceed directly to the merits."  *Id.* OEC furnished, together with its opposition, "the additional materials and arguments" that OEC stated were "pertinent to a converted motion for summary judgment."  *Id.*  Those materials included a declaration from Joseph Klobus, an employee of OEC involved in the negotiation of the Settlement Agreement, and an email thread that showed the parties' negotiations leading up to the

execution of the Settlement Agreement.  Dkt. No. 18 at 1-5, Dkt. Nos. 18-1 ("Klobus Decl."), 18-5 (the "Email Negotiations").

OEC argued that the Settlement Agreement, which provided for the release of Bulb's obligations arising from nine bills of lading, did not properly reflect the parties' intentions, as evidenced by the parties' negotiating history.  OEC argued that its evidence showed that the parties had intended that Bulb would pay $36,496.39 to OEC to settle a dispute regarding $43,839.78 that OEC had charged under three invoices arising from three bills of lading.  Opp. at 2-5, 15; Dkt. Nos. 18-4, 18-7.  In other words, according to OEC, the parties had negotiated approximately a $7,000 discount to the face amount of three invoices.  According to OEC, Bulb "owed an additional $65,283.59 under nine invoices other than the three [the parties] had been negotiating."  Opp. at 5. The Settlement Agreement's language that released OEC's claims did not reflect the parties' understanding, OEC argued—because it would result in nearly a $72,000 discount, rather than the $7,000 discount that OEC had been discussing with Bulb.  *See id.* at 14-16.

In addition, OEC argued that the provision of the Settlement Agreement that described the sum to be paid to settle the claims was ambiguous.  In OEC's view, this ambiguity was "clear evidence" that there was no meeting of the minds between OEC and Bulb as to "what was being settled upon."  *Id.* at 13-16.  Because the agreement was ambiguous, OEC contended that the Court should look to extrinsic evidence to ascertain the intent of the parties.  *Id.* at 6.  In addition, OEC argued that the Court should deny Defendants' converted motion for summary judgment because "a genuine issue remain[ed] as to whether the Purported Settlement Agreement may be rescinded" based on unilateral mistake.  *Id.* at 6, 16.  OEC asserted that even if the terms of the Settlement Agreement were unambiguous as written, the equitable remedies of reformation and rescission should be applied to rewrite the contract to be consistent with the parties' intentions or to void the contract.  *Id.* at 6.

Defendants filed their reply on November 23, 2021. Dkt. No. 21. Defendants acknowledged in their reply that the Court might convert their motion to dismiss into a motion for summary judgment and argued that in the event that the Court chose to do so, the Court "should still enter a judgment in the favor of Defendants . . . ." *Id.* at 1.

Judge Lehrburger held oral argument on Defendants' motion to dismiss on March 8, 2022. Dkt. Nos. 27, 29. At oral argument, Judge Lehrburger stated that converting the Rule 12(b)(6) motion to a summary judgment motion could be "useful," and asked OEC whether it was advocating for conversion of the motion. Dkt. No. 29 ("Oral Argument Tr.") at 3:14-17. Counsel for OEC replied that "We have no objection to [conversion of the motion], in fact, we would be fine with the Court proceeding from 12(b)(6) to Federal Rule 56 here to take these papers on in summary judgment." *Id.* at 3:19-22. Counsel for Defendants represented that she "[felt] like everything has been submitted but we would like to reserve the right to submit additional documents . . . ." *Id.* at 5:22-25, 6:1-6.

On March 15, 2022, Judge Lehrburger issued the R&R, which recommended that the Court grant judgment in favor of Defendants and award reasonable attorneys' fees and costs to Defendants pursuant to the Settlement Agreement. R&R at 24. The R&R reached that conclusion on a number of grounds. First, Judge Lehrburger determined that the Court had maritime jurisdiction over the case because OEC's claims were "based on non-payment for invoices due and owing pursuant to bills of lading[,]" and it was undisputed that the bills of lading are "maritime in nature . . . ." R&R at 15. Judge Lehrburger also concluded that the Court had personal jurisdiction over Defendants because Defendants had consented to jurisdiction in the Southern District of New York in their credit agreement with OEC. *Id.* at 17. In addition, Judge Lehrburger determined that venue was proper in this district because Defendants had agreed that any disputes in connection with the bills of lading would be brought in the Southern District of New York. *Id.* at 18.

4

Because the parties submitted—and Judge Lehrburger considered—evidence that was not incorporated in, or integral to, OEC's complaint, Judge Lehrburger converted Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) into a motion for summary judgment pursuant to Rule 12(d).  *Id.* at 12.  After examining the evidence presented by the parties, most notably the Settlement Agreement, Judge Lehrburger concluded that summary judgment should be granted in favor of Defendants.  *Id.* at 18-24.

Judge Lehrburger recommended that the Court enter judgment in favor of Defendants for two reasons.  First, Judge Lehrburger determined that the Settlement Agreement unambiguously released Defendants from liability with respect to OEC's claims because "[a]ll eight of the bills of lading on which OEC now sues are among the nine expressly and clearly identified as being the subject of the release" contained in Section 2 of the Settlement Agreement.  *Id.* at 21.  Because the Settlement Agreement was "crystal clear" with respect to this issue, Judge Lehrburger concluded, "there [was] no ambiguity and no grounds for introduction of extrinsic evidence."  *Id.*

Judge Lehrburger stated that although OEC's argument regarding ambiguity "dwell[ed]" on the language in Section 1 of the Settlement Agreement, which described the payment to be made by Bulb, the relevant provision was the release contained in Section 2 of the Settlement Agreement.  *Id.* at 19-20.  Judge Lehrburger concluded that "[n]othing about the payment provisions or any other aspect of the Settlement Agreement creates ambiguity as to the bills of lading released."  *Id.* at 20.

Second, Judge Lehrburger determined there was no basis to rescind the Settlement Agreement due to a unilateral mistake on the part of OEC.  *Id.* at 22-24.  Judge Lehrburger analyzed the issue under Kansas law[1] and determined that there was "no legal foundation for OEC to assert unilateral mistake" because OEC had made "no allegation of fraud against Bulb."  *Id.* at 22 (citing

---

[1] The Settlement Agreement includes a choice of law provision stating that the Settlement Agreement "is made pursuant to, and shall be governed by, the laws of the State of Kansas."  Dkt. No. 14, Ex. A at 2.

*Albers v. Nelson*, 809 P.2d 1194, 1198 (Kan. 1991) ("As a general rule, . . . in the absence of fraud, a unilateral mistake will not excuse nonperformance of a contract.")). The R&R also concluded that reformation or recission was inappropriate because any mistake was not a mistake of fact. The R&R stated that it was "certainly possible that OEC made a mistake by signing an agreement that included a broader release than it contemplated" but "if OEC did make a mistake, it was not one of fact but instead one of negligent review by the several team members at OEC who received it." *Id.* at 23 (internal quotation marks omitted). In other words, the R&R concluded that recission and reformation were available only in the event of a mistake of fact regarding the object of the contract, and not a mistake regarding the content of the contract.

In addition, Judge Lehrburger recommended that the Court grant Defendants reasonable attorneys' fees and costs based on a provision in the Settlement Agreement providing such relief to the prevailing party. *Id.* at 24.

OEC filed its objections to the R&R on March 29, 2022. Dkt. No. 32 (the "Objections"). In the Objections, OEC challenges Judge Lehrburger's recommendation to grant summary judgment in favor of Defendants, but requests that the Court adopt the remainder of the R&R. *Id.* at 17. OEC presents three principal arguments in its Objections. First, OEC asserts that even though both parties consented to the conversion of Defendants' motion to dismiss into a motion for summary judgment, Defendants were required to, but did not, satisfy the procedural requirements for summary judgment motions set forth in Local Rule 56.1 and Rule 3(E) of Judge Woods's Individual Rules of Practice in Civil Cases. *Id.* at 8-9. OEC urges the Court to deny the motion for summary judgment and to allow the parties to proceed to trial or to conduct discovery before considering any motion for summary judgment. *Id.* at 9.

Second, OEC argues that the Settlement Agreement was ambiguous, and that, as a result, Judge Lehrburger should have looked to extrinsic evidence to determine the parties' intent. *Id.* at 5,

9-12.  OEC contends that Judge Lehrburger's interpretation of the contract "ignored all but" the release provision in Section 2 of the Agreement, even though, in its view, Section 2 is "contingent" on Section 1, which describes Bulb's obligation to pay OEC.  *Id.* at 11; Dkt. No. 14, Ex. A. at 1-2.

Third, OEC contends that Judge Lehrburger prematurely resolved issues of material fact that should be decided at trial, including (i) whether the Settlement Agreement "was in accord with the email negotiations between the parties," (ii) whether "any of OEC's representatives observed the mistake in the . . . Settlement Agreement" pertaining to the provision describing the settlement sum, and (iii) whether "Defendants or Defendants' counsel acted inequitably in failing to call OEC's attention to the modification from what was agreed to via email . . . ."  Objections at 13-14.  OEC asserts that at a minimum, "there is a question of fact as to whether Defendants knew or should have known that OEC was agreeing to settle over $109,000 in outstanding amounts for $36,496.39, as opposed to the disputed $43,839.78 that it had been negotiating" with Defendants' counsel for weeks prior to the execution of the Settlement Agreement.  *Id.* at 15.  In addition, OEC argues that Judge Lehrburger improperly shifted to OEC the evidentiary burden with respect to factual issues, even though OEC was the non-moving party.  *Id.* at 15-17.

Defendants responded to the Objections on April 12, 2022.  Dkt. No. 33 ("Defs.' Response").  OEC filed a reply in support of its partial objection to the R&R on April 19, 2022.  Dkt. No. 34 ("OEC's Reply").  A day later, Defendants moved to strike OEC's Reply, asserting that the reply was not authorized by Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C), and the Local Rules of the Southern and Eastern Districts of New York.  Dkt. Nos. 35, 36.  OEC filed an opposition to the motion to strike on April 22, 2022.  Dkt. No. 37.[2]

---

[2] Although reply briefs are not expressly authorized by 28 U.S.C. § 636(b)(1) or Federal Rule of Civil Procedure 72(b)(2), a district court may exercise its discretion to permit a party to file a reply brief in support of its objections to a magistrate judge's recommendations.  *See, e.g., Han v. Fin. Supervisory Serv.*, No. 17 CIV. 4383 (GBD) (BCM), 2018 WL 791353, at *1 n.1 (S.D.N.Y. Feb. 8, 2018).  Because replies are not contemplated by the statute or the rule, the best practice is to request prior leave from the Court before filing such a reply. Unlike the parties in many of the cases cited by OEC in its opposition to the motion to strike, OEC failed to seek prior leave from the Court to file its reply brief before doing so.

## II.     LEGAL STANDARD

### A.     Review of Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Parties may raise specific, written objections to the report and recommendation within fourteen days of receiving a copy of the report. *Id.*; *see also* Fed. R. Civ. P. 72(b)(2).

When a party timely objects to a magistrate's report and recommendation, a district court reviews *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). But where "the party makes only frivolous, conclusory or general objections, or simply reiterates her original arguments, the Court reviews the report and recommendation only for clear error." *Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 416 (S.D.N.Y. 2014) (quoting *Silva v. Peninsula Hotel*, 509 F. Supp. 2d 364, 366 (S.D.N.Y. 2007)). "Further, the objections 'must be specific and clearly aimed at particular findings in the magistrate judge's proposal.'" *McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009) (quoting *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009)). The Court also reviews for clear error those parts of the report and recommendation to which no party has timely objected. 28 U.S.C. § 636(b)(1)(A); *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008).

---

*See* Dkt. No. 37 at 2-3 (collecting cases). Nevertheless, exercising its discretion, the Court will consider OEC's Reply. That course is appropriate here because OEC's Reply responded to an argument raised by Defendants for the first time in their response to OEC's Objections—principally, the argument that Federal Rule of Civil Procedure 12(d) did not require more process than the magistrate judge provided in order to convert the motion to dismiss into a motion for summary judgment. *See id.* at 3-4 (citing Defs.' Response at 6). Additionally, the Court's Individual Rule 3(H) contemplates the filing of replies, which might have been construed as authorizing the filing of such a reply without advance leave. Accordingly, Defendants' motion to strike OEC's Reply, Dkt. No. 35, is denied.

### B.      Summary Judgment

Under Federal Rule of Civil Procedure 56, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))).  A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323).  To defeat a motion for summary judgment, the non-movant "must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quoting former Fed. R. Civ. P. 56(e)).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).  The Court's job is "not to weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002) (citation omitted); *see also Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("In applying

th[e] [summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses."). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citation omitted).

## III.   DISCUSSION

Neither OEC nor Defendants objected to Judge Lehrburger's determinations that the Court has subject matter jurisdiction over this case and personal jurisdiction over the Defendants, and that venue is proper. The Court has reviewed those parts of the R&R for clear error, and finds none. Accordingly, the Court adopts the R&R with respect to those issues.

The Court has reviewed the remainder of the recommendations in the R&R *de novo*. Having done so, the Court concludes that Judge Lehrburger properly determined that the language of the Settlement Agreement as written unambiguously released Defendants from liability with respect to OEC's claims arising from the eight bills of lading. However, there are triable issues of material fact regarding whether the Settlement Agreement may be reformed. Accordingly, the Court must deny Defendants' motion for summary judgment.

### A.   The Conversion of the Motion to Dismiss into a Motion for Summary Judgment Was Implemented Properly

OEC's arguments that the process used to convert Defendants' motion to dismiss into a motion for summary judgment was deficient are not sound. The procedure established by Judge Lehrburger to convert the motion to dismiss into a motion for summary judgment complied with Federal Rule of Civil Procedure 12(d). Indeed, OEC does not argue that the conversion failed to comply with that rule. Instead, it argues more narrowly that Defendants failed to comply with Local Rule 56.1 and that the process was inconsistent with Judge Woods's Individual Rules of Practice in Civil Cases. Objections at 8-9.

OEC makes two narrow procedural objections, neither of which was raised in briefing the motion or during oral argument.  First, OEC argues that Defendants failed to comply with Local Rule 56.1(a) of the Southern and Eastern Districts of New York.  OEC's Reply at 3.  This rule states that "[u]pon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement . . . of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Civ. R. 56.1(a).  OEC asserts that due to Defendants' failure to comply with Local Rule 56.1(a), OEC "was not afforded the opportunity" to submit a response to a 56.1(a) statement to illuminate where genuine issues of fact remained.  OEC's Reply at 3-4.

Second, OEC argues that Defendants failed to comply with Rule 3(E) of Judge Woods's Individual Rules of Civil Practice, which require the submission of a pre-motion letter before the submission of a motion for summary judgment to establish that there is good cause to believe that motion practice will be more efficient than moving directly to a bench trial, and also that a movant for summary judgment must follow Local Rule 56.1 with certain modifications.  Objections at 9 (citing Judge Woods's Individual Rules of Practice in Civil Cases).

OEC's late-raised procedural quibbles do not call into question the adequacy of the process implemented by Judge Lehrburger to convert Defendants' motion to dismiss into a motion for summary judgment.  Federal Rule of Civil Procedure 12(d) governs the procedure for converting a motion to dismiss pursuant to Rule 12(b)(6) into a motion for summary judgment.  Rule 12(d) provides the following:  "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

11

To comply with Rule 12(d), a court "must give notice to the parties *before* converting a motion to dismiss pursuant to Rule 12(b)(6) into one for summary judgment . . . ." *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008) (citing *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999). "The essential inquiry" in evaluating compliance with Rule 12(d) is whether the party "should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *Id.* (citing *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985)). A "party cannot complain of lack of a reasonable opportunity to present all material relevant to a motion for summary judgment when both parties have filed exhibits, affidavits, counter-affidavits, depositions, etc. in support of and in opposition to a motion to dismiss." *Id.* (citing *G. & A. Books, Inc.*, 770 F.2d at 295). Even if "only the party moving to dismiss has submitted extrinsic material such as depositions or affidavits, the opposing party may be deemed to have had adequate notice that the motion to dismiss would be converted." *Id.* (citing *G. & A. Books, Inc.*, 770 F.2d at 295).

The Court rejects OEC's argument that it "was not afforded the opportunity" to inform the Court of genuine issues of fact. OEC's Reply at 3-4. First, OEC expressly recognized, in its opposition and at oral argument, the possibility that Defendants' motion might be converted to a motion for summary judgment. *See* Opp. at 1; Oral Argument Tr. at 3:19-22. Indeed, it expressly welcomed the conversion of the motion. Second, OEC had a reasonable opportunity to present evidence to meet the facts outside the pleadings. OEC's counsel stated that OEC had filed the materials that were pertinent to the converted motion for summary judgment and assured Judge Lehrburger that the Court could take "these papers on in summary judgment." Oral Argument Tr. at 3:22. OEC submitted evidence in connection with the converted motion for summary judgment. And a "party cannot complain of lack of a reasonable opportunity to present all material relevant to a motion for summary judgment when both parties have filed exhibits, affidavits, counter-affidavits,

depositions, etc. in support of and in opposition to a motion to dismiss." *Sahu*, 548 F.3d at 67 (citing *G. & A. Books*, 770 F.2d at 295).

OEC's argument regarding Defendants' failure to comply with Local Rule 56.1 ignores the fact that Local Rule 56.1 does not mandate that courts deny a motion for summary judgment for failure to submit such a statement. Local Civ. R. 56.1(a) (stating that "[f]ailure to submit such a statement *may* constitute grounds for denial of the motion") (emphasis added). Judge Lehrburger acted within his reasonable discretion by not requiring the submission of such a statement in connection with the converted motion: it was not originally noticed as a motion for summary judgment, and the issues presented by the motion were relatively straightforward. OEC had ample opportunity to identify disputed issues of material fact through its briefing and evidentiary submissions—just as litigants across the country do in federal district courts that have not adopted a practice akin to the Southern and Eastern District of New York's Local Rule 56.1.

OEC's argument that the conversion was inappropriate because Defendants failed to comply with Judge Woods's Individual Rules of Practice in Civil Cases lacks all merit. The Court referred the case to Judge Lehrburger nearly a month before Defendants filed their motion to dismiss. Judge Lehrburger's Individual Rules governed the filing of that motion and any motion for summary judgment, not Judge Woods's. Judge Woods's Individual Rules simply did not apply.

### B.   As Written, the Settlement Agreement Released Defendants from Liability as to OEC's Claims Arising Out of the Eight Bills of Lading

Judge Lehrburger properly determined that the Settlement Agreement, as written, unambiguously released Defendants from liability for OEC's claims arising from the eight bills of lading at issue in this suit. R&R at 20. OEC's Objections do not persuade the Court otherwise.

Neither party objected to Judge Lehrburger's recitation of Kansas law as it pertains to the interpretation of contracts. The R&R fairly recounts Kansas law regarding the interpretation of

contracts, so the Court need not repeat it again here, and instead points the reader to Judge Lehrburger's careful treatment of the standard.

In its Objections, OEC argues that Judge Lehrburger "ignored all but" the release provision in Section 2 of the Settlement Agreement. Objections at 11. OEC reiterates its argument that Section 1 of the Settlement Agreement, which described the "Payment" to be made by Bulb, was ambiguous. OEC adds that "the ambiguity flows through the entirety of the Purported Settlement Agreement" and that Section 2, too, is ambiguous. OEC's Reply at 5-6; *see* Objections at 11. OEC asserts that Section 2 is ambiguous because it could be read to release the parties from any disputes arising from the nine bills of lading listed in the provision *without* releasing Defendants from paying the sums they agreed to pay, or, alternatively, that Section 2 released the parties from all payments that were due. OEC's Reply at 6-7.

Judge Lehrburger correctly concluded that the Settlement Agreement as written unambiguously releases OEC's claims against Defendants with respect to the eight bills of lading at issue in this case. The Settlement Agreement expressly lists the bills of lading at issue here in the release provision.

The amount of the sum that Defendants were required to pay in order to secure the release is also clear. As OEC correctly notes, the release in Section 2 is premised upon the receipt of "Payment" by OEC. Dkt. No. 14, Ex. A at 1. Section 1 describes the "Payment by Bulb Basics." It states that "[a] settlement sum has been agreed to by the Parties in the amount of thirty-six thousand four hundred and ninety-six dollars and thirty-nine cents ($36,496.39), representing the outstanding balance on the account Bulb Basics has with OEC . . . ." *Id.*

OEC's argues that the phrase "representing the outstanding balance on the account Bulb Basics has with OEC" is ambiguous. But its argument ignores the fact that the settlement sum, however characterized, is clear: the "settlement sum" is "in the amount of . . . $36,496.39." *Id.*

Accordingly, the Settlement Agreement as written unambiguously released Defendants from liability with respect to the eight bills of lading upon payment of the $36,496.39 "settlement sum."

OEC's argument that Section 2 of the Settlement Agreement did not release Defendants from paying amounts that Defendants had conceded were due during contract negotiations is not supported by the agreement's text. The release contained in Section 2 expressly provides that, upon payment of the settlement sum and execution of the Settlement Agreement, the parties agreed to release each other from "any and all" causes of action, claims, promises, or liabilities "arising or which could have arisen from the cargo and shipments covered by" the eight bills of lading "except as to the obligations and rights arising out of this Agreement." R&R at 21; Dkt. No. 14, Ex. A at 1. There is no textual basis for OEC's argument that the provision is limited to only certain claims identified during negotiations. Section 2 of the Settlement Agreement as written unambiguously provides that it releases all claims arising from the cargo and shipments covered by the eight bills of lading at issue here.

In sum, Judge Lehrburger properly concluded that the Settlement Agreement as written is unambiguous, and that it releases OEC's claims with respect to the bills of lading at issue in this case. However, because the contract is susceptible to reformation, as described below, the Court cannot adopt Judge Lehrburger's recommendation that summary judgment be granted at this time. "The fact that a contract is unambiguous is completely irrelevant to the remedy of reformation." *Schlatter v. Ibarra*, 542 P.2d 710, 719 (Kan. 1975). "'The very purpose of an action for reformation is to have an instrument altered to make it state the true agreements of the parties to it, and the fact the instrument sought to be reformed is couched in clear and unambiguous language does not preclude inquiry as to whether it expressed the agreement.'" *Id.* (*quoting Snider v. Marple*, 213 P.2d 984, 989 (Kan. 1950)).

**C.**     **The Court Cannot Rule as a Matter of Law that the Settlement Agreement Cannot Be Reformed**

The Court cannot rule as a matter of law that the Settlement Agreement cannot be reformed under Kansas law.  The R&R rejected OEC's argument that the evidence that it had presented would permit a court to find that the Settlement Agreement should be rescinded for two basic reasons:  First, the R&R concluded that OEC needed to establish a mistake of fact in order to be entitled to reform the contract, and that OEC had not shown a mistake of fact—but, rather, that it had merely negligently reviewed the content of its contract.  Second, the R&R concluded that OEC had not presented evidence that Bulb had committed fraud.  *See* R&R at 22-23.  However, Kansas law establishes a more forgiving test for reformation than that applied by the R&R.  As a result, the Court cannot adopt its recommendation with respect to this issue.

**1.     OEC Has Raised Genuine Issues of Material Fact Regarding Its Mistake**

OEC has presented sufficient evidence to support its assertion that the Settlement Agreement should be reformed under Kansas law due to ignorance or mistake.  With respect to the issue of mistake, the R&R acknowledged that it was "certainly possible that OEC made a mistake by signing an agreement that included a broader release than it contemplated[,]" but emphasized that OEC had not made a mistake of "fact."  *See* R&R at 23.  Lacking evidence of a mistake of fact, the R&R concluded, OEC could not demonstrate that the contract should be reformed.

Kansas law permits reformation on the basis of a party's mistake regarding the language of its agreement.  The Kansas Supreme Court has explained that "reformation of an instrument will be granted without regard to the cause of the failure to express the contract as actually made, whether due to fraud, *mistake in the use of language*, or any other thing which prevented the expression of the true intention of the parties."  *Gilbert v. Mut. Ben. Health & Acc. Ass'n*, 241 P.2d 768, 774 (Kan. 1952) (emphasis added).

> It has long been the law that a written instrument may be reformed where there is ignorance or a mistake on one side and fraud or inequitable conduct on the other, as where one party to an instrument has made a mistake and the other knows it and fails to inform him of the mistake or conceals the truth from him. Where, unknown to one of the parties, an instrument contains a mistake rendering it at variance with the prior understanding and agreement of the parties, and the other party learns of this mistake at the time of the execution of the instrument and later seeks to take advantage of it, equity will reform the instrument so as to make it conform to the prior understanding. Thus, unilateral mistake may be the basis for relief when it is accompanied by the fraud of, or is known to, the other party.

*Andres v. Claassen*, 714 P.2d 963, 969 (Kan. 1986).

In *Gilbert,* the Kansas Supreme Court made clear that mistake "in use of language" in a contract sufficed to permit reformation. *Gilbert*, 241 P.2d at 774. The Kansas Supreme Court's decision in *Andres v. Classen* also illustrates that "ignorance or mistake" regarding the terms of a contract permit reformation of a contract. *Andres*, 714 P.2d at 969. In that case, the Kansas Supreme Court upheld the reformation of a contract that provided for the sale of a property interest that had not been discussed or negotiated by the parties. *Id.* at 970. The trial court had determined that the plaintiffs "never intended" to sell the property that was described in the contract and that the defendant knew that this was the case. *Id.* The defendant "took the contract to his attorney and had language placed in the contract covering property not negotiated or discussed by the parties" then "remained silent and the plaintiffs were misled." *Id.* The plaintiffs discussed the added language with their real estate agent prior to signing the revised contract, and therefore were aware of the language added by the defendant. *Id.* at 966. However, their real estate agent had told the plaintiffs that the language was meant to clear up any misdescription of the property to be conveyed. *Id.* The Kansas Supreme Court concluded that this evidence was sufficient to establish "ignorance and mistake" on the part of plaintiffs. *Id.* at 969.

So, under Kansas law, mistakes regarding the content of a contract can permit reformation. The R&R acknowledged that the evidence supported the conclusion that it was "certainly possible that OEC made a mistake by signing an agreement that included a broader release than it

contemplated." R&R at 23. Just such a mistake would suffice under Kansas law to permit reformation if it were known to the counterparty.

Here, OEC has presented evidence of "ignorance and mistake" that would permit a reasonable factfinder to conclude that—like the plaintiffs in *Andres*—OEC had relinquished more rights than had been negotiated or discussed by the parties.[3] *See Andres* at 969. According to the declaration from Joseph Klobus, the Claims and Insurance Manager of OEC, negotiations between OEC and Defendants centered on disputed charges under three invoices totaling $43,839.78. Klobus Decl. ¶¶ 5-12. However, Bulb owed OEC an additional $65,283.59 under nine other invoices, "none of which were addressed at any point during the settlement negotiations." Klobus Decl. ¶ 12. Like the party engaging in inequitable conduct in *Andres*, Bulb took the lead in drafting the contract. And, according to OEC, it took advantage of the opportunity: in the Settlement Agreement that counsel for Bulb drafted and emailed to OEC, "[t]he settlement sum was what OEC had agreed to by email, but [counsel for Bulb] included several other Bills of Lading [in the release] that had nothing to do with what we had been negotiating on up to that point." Klobus Decl. ¶ 11.

The negotiation history revealed in the parties' emails provides further support for OEC's position. A reasonable finder of fact could view them as revealing that the parties did not discuss or negotiate the $65,283.59 charged in connection with the eight bills of lading included in the Settlement Agreement's release. *See* Email Negotiations at 1-28. Moreover, counsel for Bulb referred to the "disputed amount" as being $28,462.28 and repeatedly asserted that Bulb "will pay in full" the past due "charges outside the disputed $28k." *See id.* at 7, 15, 17, 24. In addition, counsel

---

[3] OEC mistakenly asserts that because OEC is the non-moving party, "it must be presumed" at this stage of the litigation that OEC made an error with respect to the scope of the Settlement Agreement and, as discussed below, that Defendants acted inequitably. *See* OEC's Reply at 10. Instead, OEC must come forward with evidence showing that there is a genuine issue for trial. As described below, it has.

for Bulb agreed that Bulb would pay $13,377.50 out of the $15,377.50 charged by OEC under two other invoices.  *See id.* at 5-6.

And the language of the contract itself could be viewed as supporting OEC's position. Section 1 of the agreement states that "[a] settlement sum has been agreed to by the Parties in the amount of thirty-six thousand four hundred and ninety-six dollars and thirty-nine cents ($36,496.39), *representing the outstanding balance on the account Bulb Basics has with OEC.*"  Dkt. No. 14, Ex. A at 1 (emphasis added).  Regardless of whether the highlighted text supports the conclusion that the Settlement Agreement is ambiguous, it is suggestive of an understanding by OEC that the agreement covered only the bills of lading related to three invoices they were discussing, not the nine bills of lading that were listed in the Settlement Agreement's broad release provision.

Viewing this evidence in the light most favorable to OEC, a reasonable factfinder could conclude that OEC had demonstrated "ignorance or mistake" sufficient to permit reformation of the Settlement Agreement under Kansas law.  OEC has raised genuine issues of material fact as to whether the release provision in the Settlement Agreement encompassed claims that were never discussed or negotiated by the parties, including OEC's claims for $65,283.59 charged in connection with bills of lading that the parties did not discuss during their negotiations.  These genuine issues of material fact preclude the entry of summary judgment for Defendants.

### 2. OEC Has Raised Genuine Issues of Material Fact as to Whether Bulb Acted Inequitably

OEC has also raised genuine issues of material fact as to whether the Settlement Agreement should be reformed based on inequitable conduct by Bulb.  The R&R rejected OEC's argument that the Settlement Agreement should be reformed or rescinded because OEC had "ma[de] no allegation of fraud against Bulb."  *See* R&R at 22.  In support of this conclusion, the R&R cited the Kansas Supreme Court's decision in *Albers*, which states that "[a]s a general rule, . . . in the absence of fraud, a unilateral mistake will not excuse nonperformance of a contract."  *Albers*, 809 P.2d at 1198.

19

However, one need not prove fraud under Kansas law to permit the reformation of a contract. Kansas law permits the reformation of contract "where there is ignorance or mistake on one side and fraud *or* inequitable conduct on the other." *Jones v. Reliable Sec. Incorporation, Inc.*, 28 P.3d 1051, 1062 (Kan. Ct. App. 2001) (emphasis added) (citing *Andres*, 714 P.2d at 969).[4] Thus, a contract may be reformed where one party to the contract knows that the other party "has made a mistake" but "fails to inform him of the mistake or conceals the truth from him." *Andres*, 714 P.2d at 969. Equity also permits the reform of a contract where one party learns of a "mistake rendering [an instrument] at variance with the prior understanding and agreement of the parties . . . and later seeks to take advantage of it . . . ." *Id.* "Silence by one party to a contract, with knowledge that the other party is mistaken and that the instrument as written does not express the true intention of the parties, may constitute a misrepresentation amounting to constructive fraud." *Id.*

Here, OEC has presented evidence that could lead a reasonable factfinder to conclude that Bulb acted inequitably. Counsel for Bulb drafted the release provision of the Settlement Agreement. *See* Email Negotiations at 2. OEC has presented evidence that the release provision included several bills of lading that the parties had never discussed and that, instead, encompassed OEC's claims for $65,283.59 under nine invoices that were not addressed at any point. *See id.* at 1-28; Klobus Decl. ¶¶ 11, 12.

In negotiating the Settlement Agreement, counsel for Bulb proposed that the parties would release "all claims related to *these* shipments . . . ." *See* Email Negotiations at 7, 15, 17 (emphasis added). In the context of the negotiations, a reasonable finder of fact could conclude that it was a reference only to the shipments being discussed by the parties: OEC's evidence includes a reference to a commitment by Bulb to "pay in full" the past due charges outside of the "disputed $28k." *See*

---

[4] The distinct language used in *Albers* and *Andres* is explicable: apart from the "as a general rule" that introduces the quoted language in *Albers*, one case (*Albers*) speaks to the standard for excuse of performance, the other (*Andres*) that for reformation of a contract.

Email Negotiations at 7, 15, 16.  Counsel for Bulb also confirmed that Bulb would pay $13,377.50 out of the $15,377.50 charged by OEC under two other invoices.  *See id.* at 5-6.  Thus, a reasonable finder of fact could conclude that the parties had agreed to settle the $43,839.78 charged by OEC and that the Settlement Agreement's release provision was knowingly drafted by Bulb to encompass claims that were not within the scope of their discussions, or that it remained silent in the face of a known mistake by its counterparty.

The parties and the R&R discuss in some detail the decision by Judge Conner in *Kraft Foods, Inc. v. All These Brand Names, Inc.*, 213 F. Supp. 2d 326 (S.D.N.Y. 2002).  While that decision involved New York, rather than Kansas, law, its analysis of a similar set of facts is instructive.  In *Kraft*, after concluding that the contract at issue was unambiguous as written, the court denied summary judgment with respect to the issue of rescission.  The court found that there was an issue of fact as to whether the defendant knew or should have known of the plaintiff's mistake.  *See Kraft*, 213 F. Supp. 2d at 331.  The *Kraft* court stated, "[a]ssuming arguendo that [the defendant] was aware of its total outstanding debt of $994,810.80, there would be little reason for them to believe that [the plaintiff] would knowingly release all claims for less than half their value."  *Id.*  Here, too, there would be little reason for Bulb to believe that OEC was knowingly releasing all of its claims under the nine bills of lading—including the $65,283.59 at issue in this litigation—for $36,496.39.  The emails submitted by OEC only support that point, given the extensive back-and-forth that the parties had regarding the reduction of charges totaling $43,839.78 to a settlement sum of $36,496.39.

Thus, a reasonable factfinder could conclude that Bulb knew of OEC's mistake with respect to the scope of the release provision in the Settlement Agreement—in particular, that the release encompassed OEC's claims for the $65,283.59 in charges that had not been discussed.  A reasonable factfinder could likewise conclude that Bulb knew of the mistake, failed to inform OEC of it, and later sought to take advantage of the mistake.  As such, Bulb's conduct could be found by a

reasonable factfinder to be the kind of inequitable conduct that permits reformation under Kansas law.  *See Andres*, 714 P.2d at 970 (holding that there was evidence to establish "at the very least, inequitable conduct on the part of the defendant" where defendant "remained silent" about language that he had an attorney add to the contract that covered "property not negotiated or discussed by the parties").

Because genuine issues of material fact remain as to whether OEC made a mistake and as to whether Bulb acted inequitably, the Court cannot rule as a matter of law that the Settlement Agreement should not be reformed.  Accordingly, the Court denies Defendants' motion for summary judgment with respect to OEC's claims for breach of contract and unjust enrichment.

### D.    Defendants' Request for Attorneys' Fees Is Denied Without Prejudice

The Court denies without prejudice Defendants' request for attorneys' fees, as that request is premature.  Judge Lehrburger recommended that the Court grant Defendants' request for attorneys' fees pursuant to the Settlement Agreement, which provides that "the prevailing party" in litigation in which "this Agreement is asserted as the basis for a claim or defense . . . shall be entitled to recover its reasonable attorneys' fees and costs incurred in connection with the litigation."  R&R at 24; Dkt. No. 14, Ex. A at 2.  Because this litigation will continue and there is no prevailing party yet, it would be premature to award attorneys' fees to either party at this stage.  Thus, the Court declines to adopt the R&R's recommendation to grant attorneys' fees to Defendants and denies Defendants' motion for summary judgment with respect to the issue of attorneys' fees.

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is DENIED. Defendants' motion to strike OEC's Reply is DENIED.

The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 12 and 35.

SO ORDERED.

Dated:  September 27, 2022
        New York, New York

_____
GREGORY H. WOODS
United States District Judge